# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRIAN LOOS,

    Plaintiff,

v.

BASF CORPORATION,

    Defendant.

Case No.

Hon.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
RYAN T. FOWLER (P84210)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## **COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff, Brian Loos, by and through his attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and for his Complaint against Defendant states as follows:

1.    Plaintiff, Brian Loos, is a resident of the City of Grosse Pointe Woods, County of Wayne and State of Michigan.

2. Defendant, BASF Corporation, (hereafter BASF) is a foreign profit corporation whose resident agent is The Corporation Company, 40600 Ann Arbor Rd. E. Ste. 201, Plymouth, MI 48170, and is duly authorized to do business in the State of Michigan.

3. Jurisdiction and venue are proper in the District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and jurisdiction and venue is otherwise proper in this Court.

5. Plaintiff brings this action for damages stemming from the acts and/or omissions of Defendant constituting harassment, discrimination, adverse employment action and wrongful termination which resulted in emotional and economic damages to the Plaintiff in violation of the Michigan Elliot Larson Civil Rights Act ("ELCRA").

## GENERAL ALLEGATIONS

6. Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7. Plaintiff is a 43 year old male.

8. Plaintiff began his employment with Defendant in November of 2018, and was most recently employed as a Senior Global Digital Products Manager.

9. Plaintiff was subjected to disparate treatment on the basis of his age by his employer, BASF, from day one. When Plaintiff first started working, he was segregated off with the other two "older employees" on the floor.

10. Plaintiff was placed at a filthy desk covered in junk between two other employees, each over the age of 50, while everyone else on his team, well under the age of 40, sat congregated in another, nicer section.

11. Plaintiff's coworkers regularly referred to him as "Boomer," in a derogatory fashion meant to disparage his age and generation, while also stating that his "old guy references" were incomprehensible.

12. Throughout his time at BASF, Plaintiff observed a pattern wherein younger problematic employees were given a PIP, multiple chances to improve, or were spared consequences altogether, while older employees were abruptly terminated with little to no explanation, especially in advance of the distribution of annual bonuses.

13. Plaintiff also observed older workers being terminated for alleged violations that did not rise to level of a termination offense, while younger employees were not disciplined for more egregious offense.

14. Plaintiff accepted a position with BASF in large part due to its promise of tuition reimbursement. However, BASF consistently resisted reimbursing Plaintiff's tuition for accredited programs for months on end, while

simultaneously giving swift approval and reimbursement to Plaintiff's younger coworkers.

15. Not long after he started with Defendant, Plaintiff was tasked with managing a team that had been without leadership for approximately one year.

16. The team was composed of approximately 15 people all under the age of 30 (several under the age of 25), with the exception, of one employee who was 40 years old.

17. Plaintiff began his new role managing the Smarttrak Team and found them to be in chaotic disarray.

18. The building in which they worked had faulty electrical, was littered with trash and debris, some of which was hazardous, and did not have heat.

19. When Plaintiff took charge of the team, it was common for his younger employees to walk off the job, disappear for a day, and come back.

20. The team was composed primarily of males all in their 20's, and they would frequently use the women's restroom because it was closer to the office suite.

21. Almost immediately upon starting his role as Manager of the Smarrtrak Team, Plaintiff began receiving numerous unfounded complaints from the team about the older 40 year-old employee.

22. Plaintiff also witnessed the younger employees on the team relentlessly picking on and tormenting the older employee.

23. Plaintiff spoke with the team regarding the mistreatment suffered by the sole 40 year-old employee, but the hostility toward him continued.

24. From the outset, the Smarttrak team resisted Plaintiff's leadership, and resented him for simply doing his job.

25. Early on in Plaintiff's tenure as manager of the team, Plaintiff had to routinely correct younger team members about simple mistakes relating to their work.

26. At one point Plaintiff was forced to explain the difference between Austria and Australia, to which certain team members took great offense, and complained that Plaintiff was trying to "make them go back to school," so he could "be their teacher."

27. Regardless of how polite and accommodating Plaintiff was as a manager, or how patiently he worked with his team, they continued to resist his leadership, undermine his authority, and treat him with blatant disrespect due to his age, causing a hostile work environment.

28. One employee in particular, Marcus Sheppard, was especially brazen in his hostility toward Plaintiff, tearing posters showing team performance off the wall after Plaintiff hung them up.

29. After each incident with Sheppard, the team of 20-year-old employees would rally around him and try to cover for him.

30. A pattern developed around Sheppard's conduct, wherein he would submit faulty work, or otherwise misbehave, and his teammates would cover for him, and then insinuate to Plaintiff that if he took action against Sheppard, they would complain about him to Human Resources.

31. On more than one occasion Sheppard and his teammates did in fact raise baseless complaints about Plaintiff to his superiors and/or to Human Resources, yet Plaintiff was not interviewed about the alleged incidents, nor was he given the opportunity to present his version of events and how he was simply managing his team.

32. At all times, Plaintiff's younger supervisor and those in HR, all of whom were younger than Plaintiff, adopted the younger employees complaint as true without conducting any type of investigation.

33. Throughout his employment with BASF, Plaintiff was subjected to harassment and discrimination based on his age by his younger counterparts, who targeted him and made complaints against him due to his age.

34. Plaintiff is not the only BASF employee over the age of forty to be terminated following baseless complaints from a group of younger team members

in their twenties, and in fact Plaintiff witnessed this same process play out with at least three other older employees.

35. When Defendant, BASF's Human Resources Department responded to the false allegations brought against Plaintiff by younger employees, it did not reach out to any older employees with knowledge of the matters, and instead limited its interviews and investigations to the younger employees.

36. The same young employees who complained against Plaintiff also played a significant role in lodging complaints against another employee over the age of forty, who was also subsequently terminated.

37. Plaintiff's immediate supervisor for much of his time at BASF, Christian Holland, then age 27, routinely held direct meetings with Plaintiff's youngest employees, undermining Plaintiff's authority and fostering tension within his team.

38. Holland informed Plaintiff when there were issues with employees under the age of forty that they must be placed on a performance improvement plan (PIP), extensive paperwork had to be completed, and a thorough investigation completed.

39. Plaintiff was never placed on a PIP, given the opportunity to defend himself to Human Resources, or allowed the benefit of an actual investigation of the claims against him.

40. Not only was Plaintiff treated with hostility by younger BASF employees both subservient and superior to him, but he was uniquely singled out for such disparate treatment on the basis of his age.

41. Defendants' actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

42. On or about October 22, 2020 Plaintiff submitted a Charge of Discrimination with the EEOC.

43. More than 60 days have passed since Plaintiff filed his Charge of Discrimination, and the EEOC has yet to issue the Right to Sue letter, but Plaintiff is allowed to file this Complaint under the ADEA.

## COUNT I
## AGE DISCRIMINATION

44. Plaintiff incorporates by reference paragraphs 1 through 22 of the Complaint as though fully set forth herein.

45. Pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*. and the Age Discrimination Act of 1967 ("ADEA"), 29 U.S.C. § 621 Plaintiff is guaranteed the right to be free from discrimination from his employer, and their agents, representatives and employees based upon his age.

46. Plaintiff's age was a factor in Defendant's conduct creating a hostile work environment and employment decisions, including adverse employment actions and termination.

47. Defendant is Plaintiff's employer within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*. and the Age Discrimination Act of 1967 ("ADEA"), 29 U.S.C. § 621.

48. During the course of his employment with Defendant, Plaintiff was subjected to unwelcome age discrimination including adverse employment action based upon his age.

49. The age discrimination and adverse employment actions by Defendant were intentional and willful, and had the purpose and/or effect of substantially interfering with Plaintiff's employment, and created a hostile work environment.

50. The age discrimination and conduct by Defendant violated the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*. and the Age Discrimination Act of 1967 ("ADEA"), 29 U.S.C. § 623.

51. As a proximate result of the age discrimination and conduct by Defendant, Plaintiff has sustained injuries including, but not limited to, physical pain and suffering, mental anguish, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant, in an amount in excess of $75,000.00, plus exemplary damages,

together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

          Respectfully submitted,

          **BATEY LAW FIRM, PLLC**

          By: /s/ Scott P. Batey
              SCOTT P. BATEY (P54711)
              RYAN T. FOWLER (P84210)
              Attorneys for Plaintiff
              30200 Telegraph Road, Suite 400
              Bingham Farms, Michigan 48025
              (248) 540-6800
              sbatey@bateylaw.com
              rfowler@bateylaw.com

Dated: April 26, 2021

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Brian Loos, by and through his attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issued allowed by law.

                                              Respectfully submitted,

                                  **BATEY LAW FIRM, PLLC**

                            By: /s/ Scott P. Batey
                                SCOTT P. BATEY (P54711)
                                RYAN T. FOWLER (P84210)
                                Attorneys for Plaintiff
                                30200 Telegraph Road, Suite 400
                                Bingham Farms, Michigan 48025
                                (248) 540-6800
                                sbatey@bateylaw.com
                                rfowler@bateylaw.com

Dated:  April 26, 2021